## McClees v. Commonwealth.

(Decided March 23, 1920.)

### Appeal from Letcher Circuit Court.

1. Homicide—Sufficiency of Evidence—Verdict.—Where one eye witness to a homicide gives testimony sufficient, if believed by the jury, to sustain the verdict, the verdict will not be set aside, even though against the weight of the evidence, unless it be palpably and flagrantly so.

2. Homicide—Trial—Instructions.—An instruction which tells the jury that an officer, who is charged with murder growing out of a homicide occurring while attempting to arrest the deceased, had the right and it was his duty to arrest the deceased, need not contain a clause telling the jury that it was the duty of the deceased to peaceably submit to arrest on demand of the defendant, because it follows from the right of the officer to make the arrest that it was the duty of the defendant to peaceably submit thereto.

3. Homicide—Instructions.—Other instructions given on the trial examined and held to conform to instructions heretofore approved by this court in similar cases.

W. H. MAY, D. D. FIELDS and D. I. DAY for appellant.

CHARLES I. DAWSON, Attorney General, and T. B. McGREGOR Assistant Attorney General, for appellee.

Opinion of the Court by Judge Sampson—Affirming.

The grand jury of the Letcher circuit court returned an indictment charging appellant, Herman McClees. and two other persons, Nathan Wright and Thomas Quillen, with conspiring to and willfully murdering Olvin Houston in the town of Fleming, on Sunday, November 30, 1919. A severance of trial was granted. The Commonwealth elected to try McClees first and he was convicted of the crime of manslaughter and · given three years in the state penitentiary. From this judgment he appeals. In his motion and grounds for a new trial he sets forth eight reasons, but he chiefly complains of the insufficiency of the evidence to sustain the verdict and the failure of the court to properly instruct the jury as to the law of the case.

McClees was a peace officer in the town of Fleming and was on duty at the time of the homicide. The deceased Houston and a nephew named Grant Wright were intoxicated. In fact they had been drinking intoxicating liquors all day and the killing happened about eight o'clock at night. There is quite a lot of evidence in the record tending to show that the deceased was engaged in the illicit sale of liquors. At any rate, he appeared to have an unusual supply of moonshine. Houston and Wright slept together at the home of a neighbor on the night previous. Next morning, which was Sunday, Houston gave Wright a quart of moonshine and they began to drink. Houston had other liquor. They armed themselves with pistols and later in the day went up and down through the town firing at random and uttering threats against the peace officers of the town. The defendant, McClees, worked part of the morning at the coal tipple but in the afternoon patrolled the town in an effort to keep order. He came home for supper about six o'clock, and just as he finished his meal he heard some shots in the edge of town and apparently along the public highway. On making some investigation he learned the shooting was done by Olvin Houston and Grant Wright whom he had seen in the afternoon in a drunken condition. About the time he received this information Nathan Wright, a brother to Grant Wright, came along and told McClees that he should not go down in town in an attempt to arrest Houston and Grant Wright because he had just seen them and they said to

him that "If you bring him (McClees) down here I will
burn the God-damned rags off of him." When McClees
heard this he asked Nathan Wright to go with him down
town in order to preserve order, but Wright went on to-
wards his home, and defendant went back towards his
home and procured another pistol and again started to-
wards the place of the shooting. When he came to the
railroad track, which was the principal walkway through
the town, he met Nathan Wright and Thomas Quillen,
and he summoned these two men to assist him in arrest-
ing Houston and Grant Wright. The three proceeded
in the direction of the shooting but only a short distance
when they stopped on the railroad track. Shortly they
saw two men approaching; one of them fired off his pistol
and was singing. It proved to be Houston and Grant
Wright. Houston was carrying a pistol in one hand and
a jug of moonshine liquor in the other, while Grant
Wright was carrying his thirty-eight special in his hand.
According to the evidence of defendant and his witnesses
Grant Wright when he came up said, "Hello Buddie,"
to which the defendant replied "Good evening, gentle-
men," and then said, "Consider yourselves under ar-
rest;" to which Grant Wright responded in substance:
"There is not a God-damn thing doing; stand your
ground, Olvin," and at the same time threw his pistol
into a shooting position pointing in the direction of de-
fendant, at which time Nathan Wright sprang forward
and grappled his brother Grant Wright and took the
pistol from him. While this was going on, Houston
threw up his pistol, striking defendant in the side. Where-
upon defendant fired four shots in quick succession into
the head and face of Houston, killing him instantly. The
defendant is sustained in his evidence by Nathan Wright
and Thomas Quillen, but he is contradicted by Grant
Wright, who says that there was not a word uttered be-
fore the shots were fired which killed Houston, except
Nathan Wright said, "This is your brother" when he
grabbed Grant and took the pistol; and further Grant
Wright testified that defendant McClees fired only one
shot into the body of Houston before he fell and fired
three shots into his face after he lay on the ground. No
one corroborates Grant Wright, and his testimony on
other points is very unsatisfactory. However, his state-
ment was heard by the jury and was sufficient, if believed

by the jury, to have warranted the jury in returning the verdict of guilty.

Appellant insists that the instructions are erroneous and prejudicial, but we have carefully examined them and have compared them with instructions heretofore approved by this court in similar cases and find they contain no prejudicial error.

Instruction No. 4a is assailed because it does not require the deceased to peaceably submit to arrest. This instruction reads:

"The court instructs the jury that in making the arrest of the deceased, Olvin Houston and Grant Wright, or either of them, it was the duty of the defendant to notify them, or the one about to be arrested of his intention to arrest them, or him, and of the offense charged against them, or either of them, for which he was making such arrest, unless they, or either of them knew that they, or either of them, were about to be arrested and the offense charged, if he had a reasonable opportunity to do so, or unless the said deceased, Olvin Houston, or Grant Wright made an immediate attack upon the defendant, or upon Nathan Wright or Thomas Quillen and thereby prevented him from so doing."

Appellant urges that this instruction should have contained a clause in substance as follows:

It was the duty of the deceased to peaceably submit to such arrest upon the demand of defendant.

The trial court could very properly have added this to the instruction, but in as much as the jury was told that the defendant Herman McClees was a deputy town marshal and as such had the right and it was his duty to preserve the public peace and to prevent any and all breaches of the public peace, and to arrest offenders in order to preserve the peace, and further that McClees "had the right and it was his duty to go to said Olvin Houston and Grant Wright, or either or both of them, and to use such force as was reasonably necessary to prevent the continuance of said conduct, and if said deceased Olvin Houston or Grant Wright, or either of them, refused to obey or so conduct himself or themselves in the presence of the defendant, or defendant had reason to believe or believed that said deceased, or Grant Wright was then and there about to kill defendant, or Grant Wright, or Thomas Quillen or either of them, or do defendant, or Nathan Wright or Thomas

Quillen, or either of them, some great bodily harm, and defendant believed and had reasonable grounds to believe from the conduct of the said Alvin Houston, or Grant Wright that to avoid such danger, either real or to him, or them, or either of them apparent, it was necessary to shoot said Olvin Houston, you will find the defendant not guilty,'' it was unnecessary to restate the principle in the manner suggested, because as the jury was told that the defendant had the right to arrest Houston, it necessarily followed that it was the duty of Houston to peacefully submit to the arrest.

The verdict is awkwardly constructed, and of this appellant complains. It reads: ''We the jury do agree and fine the defendant guilty and fix his fine at three years confinement in the state penitentiary.'' While it is oddly stated and grammatically incorrect, it would be practically impossible for any reasonable person to misunderstand the meaning of the jury. Had the appellant objected to the form of the verdict at the time it was read in court and before the jury dispersed, the court would have required the jury to retire to its room and reform the verdict, but in failing to ask this, the appellant waived his objection and cannot now be heard to complain of the grammatical defects of the verdict.

One of the jurors who tried the case was a distant relative of the deceased, Olvin Houston, but at the time he was accepted on the jury and tried the case he did not know of the relationship and did not regard himself as related until after the trial was over and the question was raised by counsel, whereupon the Commonwealth's attorney approached the discharged juror and inquired if he was related to the deceased, and was answered in the negative. An investigation was then had in open court to determine whether the juror in question was of kin to the deceased. Several witnesses, including the juror, were called, and while it appears that the juror was in fact related to the deceased, it equally well appears that the relationship was wholly unknown to the juror at the time he was serving on the jury and he was not, therefore, influenced by it in any manner whatever. A juror who does not know of or recognize the relationship between himself and a defendant, or other party, to an action, cannot by any course of reasoning known to us be biased or influenced thereby. If on the investigation had in the circuit court it had appeared that the

juror knew of the slight relationship which existed between him and the deceased, we would be much inclined, in a case like this, to set aside the verdict.

On a review of all the evidence in 'the record, we incline to the opinion that the great weight is in favor of the defendant, and we wonder what influenced the jury to find him guilty unless it was the evidence of Grant Wright. The testimony of this witness was so palpably untrue with reference to the liquor which he and his uncle had obtained, as well as o'ther matters which transpired during the day preceding the homicide, that we can scarcely believe the jury attached much importance to it. Defendant appears to have been a sober, peaceable citizen and good officer. The deceased, while bearing a bad name, was intoxicated and armed with a deadly weapon at the time of the difficulty. It was the duty of the officer to arrest Houston, but, according to the weight of the evidence. Houston declined to be arrested and manifested a disposition to fight. Under such circumstances the officer had the right to use such reasonable force as was necessary to overcome the resistance offered even to the taking of the life of the deceased. One of the age and experience of Houston must have realized the danger of the life he was leading and the menance he was to the community. Too much consideration should not be given to those who deliberately arm themselves with deadly weapons and willfully intoxicate themselves and start out to terrorize the community. While we find no prejudicial error in the record to justify the court in reversing the judgment of conviction, we incline to the opinion that this is a case which might properly be presented to the chief executive of the state for clemency.

Judgment affirmed.